# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAVID LEE TAYLOR,**

      **Petitioner,**

v.     **CIVIL ACTION NO. 2:09cv78**
      **(Judge Maxwell)**

**DAVID BALLARD, WARDEN,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On July 8, 2009, the *pro se* petitioner, Donald Lee Taylor ["Taylor"], an inmate in the custody of the West Virginia Division of Corrections, filed an Application for Habeas Corpus pursuant to 28 U.S.C. §2254, seeking release from segregation and discharge from custody on parole. By Order entered on August 3, 2009, the Court ordered the respondent to show cause why the petition should not be granted. On September 3, 2009, the respondent filed a Motion to Dismiss with exhibits. On September 4, 2009, a Roseboro Notice was issued, and on October 6, 2009, an order was entered extending Taylor's's time to respond by another twenty days. To date, Taylor has failed to respond. Accordingly, this matter is pending before me for an initial review and Report and Recommendation.

### II. FACTS

On May 20, 2008, Taylor was placed in immediate detention at the Huttonsville Correctional Center ("HCC") and served with a disciplinary rule violation charge for violating Rule 1.25 -

"compromising an employee." A hearing on the charge was conducted on May 29, 2008, during which Taylor entered a guilty plea. As a result, Taylor was reprimanded with 60 days punitive segregation and 60 days loss of all privileges except reading/library with 30 days suspended to three months probation to begin May 30, 2008 and end August 30, 2008 and 30 days punitive segregation and 30 days loss of all privileges except reading/library to begin May 20, 2008 and end June 19, 2008.(Doc. 1-1, p. 2). The Magistrate also recommended that Taylor be transferred to a more secure facility.

According to Taylor, he was scheduled for a parole hearing on May 27, 2008. However, West Virginia Parole Board Procedure Rule 4.2 states as follows: "No inmate who is incarcerated in punitive segregation shall be eligible for parole. Because the segregation unit reported that Taylor was housed in punitive segregation, the parole board did not conduct his hearing when they were at the HCC from May 27-29, 2008. (Doc. 1-6, p. 2).

On June 12, 2008, Taylor appeared before the Administrative Segregation Committee at the HCC at which time he was placed in Administrative Segregation and was recommended for transfer to the Mount Olive Correctional Complex ("MOCC"). (Doc. 1-5, p. 2). The committee's recommendation not to return Taylor to the general inmate population was based upon the "[i]nability for [Taylor] to learn from consequential learning," and his "numerous write ups."[1] On June 25, 2008, Taylor was transferred to the MOCC. (Doc. 1-5, p.3). On July 2, 2008, the Administrative Segregation Committee at the MOCC reviewed his file, and placed Taylor in the

---

[1] During his imprisonment, Taylor has been found guilty of over 120 disciplinary rule violations and has a long history of placement in administrative and punitive segregation. (Doc. 15-1, pp. 12-30).

2

Administrative Segregation/Quality of Life program.[2] (Doc. 1-5, p. 2). As of July 8, 2009, the date Taylor filed his pending § 2254 petition, he was still in the Quality of Life program

### III. CLAIMS BY PETITIONER

In his petitioner, Taylor claims that he was denied his right to a fair and impartial hearing officer at his administrative segregation hearing. In addition, Taylor claims that he was unlawfully denied his right to consideration for parole release since May 27, 2008. In his prayer for relief, Taylor requests that this court issue an order for his immediate release from segregation as well as for his immediate release on parole.

### IV. RESPONDENT'S MOTION TO DISMISS

In support of his Motion to Dismiss, the respondent argues that Taylor does not have a liberty interest against being assigned to the Quality of Life program at the MOCC. In the alternative, the respondent argues that Taylor received his due process with respect to his assignment in the Quality of Life program. With respect to Taylor's claims regarding parole, the respondent argues that any claim that the parole board should have considered him eligible for parole release in May of 2008 is a question of state law and not properly raised in a § 2254 petition.

### IV. STANDARD OF REVIEW

**A. Summary Judgment**[3]

---

[2]The Quality of Life Program is a program created for inmates who are assigned to administrative segregation in the Mt. Olive Correctional Complex. The program is designed so that an inmate, upon his demonstrated good behavior and program completion, may progress through five administrative segregation custody levels and be returned to the general inmate population. (Doc. 15-1, pp. 2-10).

[3]Although the respondent has asked that his Motion be treated under both Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, in the motion, he clearly asks that the Court to rely on documents and declarations attached as exhibits. When matters outside the pleadings are presented to a court on a motion to dismiss, and the court does not exclude those matters, the

3

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

**B. Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment,

---

motion must be treated as a motion for summary judgment rather than a 12(b)(6) motion,

the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Federal habeas relief does not lie for errors of state law." Thomas v. Taylor, 170 F.3d 466, 470 (4th Cir. 1999); see, also, Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

The "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims - *in federal terms* - to the highest state court prior to presenting them for federal habeas review. Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted). This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Id. To exhaust a claim in state court, the petitioner must "expressly raise[] that same federal constitutional claim in state court that he raises in federal court." Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C. Aug. 1, 2006). "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

Even if a petitioner is found to have exhausted his state remedies, the federal court may not grant habeas relief for claims adjudicated on their merits by the state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved in an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;

5

or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001) (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas

6

relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

## IV. ANALYSIS

### A. Administrative Segregation

In Hewitt v. Helms, 459 U.S. 260, 476 (1983), the United States Supreme Court addressed due process requirements in a case involving the placement of an inmate in "administrative segregation" and held:

> We think an informal, nonadversary evidentiary review sufficient both for the decision that an inmate presents a security threat and the decision to confine an inmate to administrative segregation pending completion Of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decision maker reviews the charges and then-available evidence against the prisoner the Due Process Clause is satisfied.

West Virginia Division of Corrections' Policy Directive 326.01 (Administrative Segregation) sets forth that an inmate will receive notice prior to the initial administrative segregation hearing, will have the opportunity to appear and participate in the hearing, will receive a decision, including the reasons for the decision, and will be able to administratively appeal the decision. (Doc. 15-2, pp.

7

11-17). Taylor does not allege that he was deprived of any of these guaranteed procedural rights. Rather, he claims that one of the three committee members responsible for the initial recommendation to assign him to "administrative segregation" was the father of an officer who Taylor had verbally assaulted nine months earlier; and he did not get to call a witness who could have "testified to any purported evidence or other factors (if any) being relied upon by the Committee in making their recommendations. (Doc. 1, p. 3).

Unlike the Due Process in parole revocation hearings, there is no similar requirement that the hearing body be neutral and detached when making security based placements. See Morrisey v. Brewer, 408 U.S. 471 (1972); see also Wolf v. McDonnell, 418 U.S. 539 (1974) (Committee determining whether inmate violated prison disciplinary rules and whether there should be a loss of good time was sufficiently impartial and did not present "such a hazard of arbitrary decisionmaking that it should be held violative of due process of law."). Furthermore, even if Smith had a motive to retaliate and act upon this motive, Taylor has made no allegation of such motive against the other two committee members. Under Policy directive 326.01, all three committee members must reach a consensus regarding the need for administrative segregation, and all three must sign off on the recommendation. Accordingly, Taylor was protected against a unilateral decision made by Smith. In addition, the recommendation by the committee to place Taylor in administrative segregation then had to be approved by the warden. Finally, Taylor could and did use the administrative grievance process to have the Commissioner's office review the matter. In requesting such review, Taylor was able to present a written statement which set out his opposition to his assignment to the Quality of Life Program. (Doc. 1-5, p. 4). Finally, Taylor's assignment to the Quality of Life Program had to be reviewed and approved by the Administrative Segregation Committee and the Warden at the

MOCC. Therefore, by the time Taylor went through the entire process, two segregation committees, two wardens, and the commissioner's office had reviewed and approved his assignment to the Quality of Life Program, and any "retaliatory" conduct by Smith could not be said to form the basis of said assignment.

In addition to his complaint regarding Smith, Taylor also claims he was denied due process because he was not allowed to call a witness at the hearing. However, the "opportunity to be heard" under Due Process does not require an inmate be provided the opportunity to call witnesses. Wilkinson v Austin, 545 U.S. 209, 228 (2005). The undersigned acknowledges that West Virginia Division of Corrections' Policy Directive 326.01 permits an inmate to call witnesses at the initial segregation hearing subject to prior approval of the committee chairperson. However, this policy does not serve to elevate the opportunity to call witnesses into a constitutional requirement. See Sandin v. Conner, 515 U.S. 472, 483 (1995) ("[w]e believe that the search for negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause."). Accordingly, since Taylor has failed to demonstrate that his Due Process was violated by his placement in Administrative Segregation, this claim of the petition should be dismissed.

**B. Parole Board**

Taylor's second claim in his petition is that he was eligible for parole on May 27, 2009, under West Virginia law, and the West Virginia Parole Board failed to consider him for parole release on that date. However, the establishment of a parole system, including the establishment of criteria for parole eligibility, is a state manner. A state inmate has no inherent right under the United States Constitution or federal law to be considered for parole or to particular criteria for eligibility.

See Greeholtz v. Inmates of Nebraska Penal and Correctional Complex, et al., 442 U.S. 1 (1979). Accordingly, "parole eligibility is a question of state law and therefore is not cognizable on federal habeas review." Ramdass v. Angelone, 187 F.3d 396, 407 (4th Cir. 1999); see also Engle v. Isaac, 456 U.S. 107, 119 91982); Billotti v. Legursky, 975 F.2d 113, 119 (4th Cir. 1992). Therefore, Taylor's second claim should also be dismissed.

## IV. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 15) be **GRANTED**, and Taylor's §2254 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: January 26, 2010

                                                /s/ James E. Seibert
                                                JAMES E. SEIBERT
                                                UNITED STATES MAGISTRATE JUDGE